COURTNEY HUDSON GOODSON, Justice, dissenting. The majority fails to view the evidence in the light most favorable to the State and, therefore, errs in holding that there was no substantial evidence to support the finding of premeditation and deliberation to support Thornton’s conviction of capital murder. In addition, the majority errs in finding that the trial court shifted the burden of proof to Thornton based on a comment made by the trial judge, an argument that was not made by Thornton on appeal. Because of these errors by the majority, I respectfully dissent. In criminal appeals, our standard of review is that of substantial evidence, even when the case is tried to the bench. See Witcher v. State, 2010 Ark. 197, 362 S.W.3d 321. In addition, we view the evidence in a light most favorable to the appellee and resolve all inferences in favor of the appellee. Sharp v. State, 350 Ark. 529, 88 S.W.3d 848 (2002). Also, disputed facts and determinations of credibility are within the province of the fact-finder. Id. Furthermore, circumstantial evidence may constitute substantial evidence to support a criminal conviction. Jefferson v. State, 372 -Ark. 307, 276 S.W.3d 214 (2008). The longstanding^ rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. Id. Most importantly to our standard of review, the question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. Wells v. State, 2013 Ark. 389, 430 S.W.3d 65. Upon review, this court determines whether the jury resorted to speculation and conjecture in reaching its verdict. Norris v. State, 2010 Ark. 174, 368 S.W.3d 52. Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; the test is one of substantiality. Dixon v. State, 2011 Ark. 450, 385 S.W.3d 164. This case involves a single gunshot wound to the back of the victim’s head during a shooting that took place in the defendant’s home. In its decision, the majority pays mere lip service to this court’s long-standing rule that we view the evidence in the light most favorable to the State, considering only that evidence which supports the verdict. Fernandez v. State, 2010 Ark. 148, 362 S.W.3d 905, 907. Rather than viewing the evidence in the light most favorable to the State, the majority impinges on the fact-finder’s province and independently determines that the State did not exclude every reasonable hypothesis but that of guilt. For instance, the majority acknowledges that the medical examiner testified that the bullet entered the victim’s head from behind the left ear and traveled in a downward trajectory, but immediately discounts this testimony by pointing out that the medical examiner testified on cross examination that “there were many possible scenarios to explain the track of this wound.” Curiously, the majority then implies that this court has always required evidence |17of multiple gunshots wounds to show premeditation and deliberation, as though it is impossible to show that the intent to kill exists in a single shot when there are no witnesses to the crime. However, this court has previously recognized that pointing a loaded gun at the victim is sufficient to support a capital-murder conviction. Jordan v. State, 356 Ark. 248, 253-54, 147 S.W.3d 691, 694 (2004) (decision under prior law affirming capital-murder conviction and holding that the fact that the defendant pointed a loaded gun at the victim was sufficient to satisfy the requirement that he acted under circumstances manifesting an extreme indifference to the value of human life when the victim died as the result of a single gunshot wound not fired at close range) (citing Isbell v. State, 326 Ark. 17, 931 S.W.2d 74 (1996) for the proposition that the act of pointing the weapon was sufficient to constitute the requisite circumstances regardless of whether there was an actual intent to shoot). As this court stated in its early case law, “if a man willfully and deliberately points a gun, or a pistol, which he knows to be loaded with powder and ball, at another’s head or heart, fires it and kills him, not having received any provocation from him, surely there is as much malignity in his heart, there is as little excuse for him, and there is evidence of as willful, deliberate and premeditated a purpose to kill, as if he had waylaid him.” McAdams v. State, 25 Ark. 405, 415 (1869). These cases are consistent with this court’s precedent that premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused’s conduct. Carmichael v. State, 340 Ark. 598, 602, 12 S.W.3d 225, 228 (2000) (recognizing that premeditation is not required to exist for a particular length of time, may be formed in an instant, and is rarely |18c apable of proof by direct evidence but must usually be inferred from the circumstances of the crime). In addition, the majority acknowledges witness testimony that Thornton was at his residence with the victim the night of the murder, that Thornton told someone that his gun accidently discharged, and that Thornton told another person that when “stuff happened something got on his couch.” All of this testimony was inconsistent with Thornton’s own testimony that he neither lived at the residence nor was present on the night of the shooting. Howard v. State, 348 Ark. 471, 485, 79 S.W.3d 273, 282 (2002) (“Although circumstantial, evidence that an accused was seen in proximity to the scene of a crime, as well as evidence that he offered an improbable explanation of suspicious circumstances, can be evidence of guilt.”). Forensic evidence found in Thornton’s home revealed a large amount of the victim’s blood on the back steps and on a couch inside the home. Moreover, the State introduced evidence that Thornton took the victim’s body, placed it in the trunk of the victim’s car, drove to a ditch, and dumped the body on the side of the road. See Sanders v. State, 340 Ark. 163, 168, 8 S.W.3d 520, 524 (2000) (noting that where the defendant disposed of the victims’ bodies by dumping them in a well, such an action supported the jury’s determination that premeditation and deliberation were proven). The State also presented witness testimony that Thornton had been seen shooting a .45 caliber High Point semiautomatic handgun, the same type of gun that the fired the bullet retrieved from the victim’s body. Finally, there was testimony that Thornton wrote a threatening letter regarding the testimony of three witnesses for the State. The entirety of the evidence, when viewed appropriately in the light most 119favorabIe to the State, constitutes substantial evidence supporting Thornton’s conviction for capital murder. The majority seems to emphasize that there was no testimony of any disagreement between Thornton and the victim, but that factor alone cannot be sufficient to overcome the substantial evidence presented by the State because this court has previously recognized that premeditation does not require any prior knowledge or interaction with the victim by the perpetrator. Davis v. State, 251 Ark. 771, 774, 475 S.W.2d 155, 156 (1972) (finding that there was sufficient evidence of premeditation and deliberation despite the fact that there was a total lack of evidence that the victim and defendant had ever met prior to the defendant striking the victim in the head with a wooden post). In addition, the fact that the victim was shot only once is not sufficient to eliminate the possibility of a premeditated or deliberate killing. See Shaw v. State, 299 Ark. 474, 482, 773 S.W.2d 827, 831 (1989) (finding that there was substantial evidence from which the jury could infer premeditation and deliberation sufficient to support a conviction' for attempted capital murder when the defendant fired one shot at a police officer while fleeing) (citing Stout v. State, 263 Ark. 355, 565 S.W.2d 23 (1978)). However, what is truly concerning, is that the majority never identifies what reasonable hypothesis the State failed to exclude, but yet it concludes that the fact-finder erroneously determined that there was evidence of premeditation and deliberation from a single gunshot wound to the back of the victim’s head. When analyzing the majority’s decision, however, I am also troubled by its conclusion that the trial court shifted the burden of proof to Thornton. Thornton does not raise the |2nargument that the trial court improperly shifted the burden of proof. I acknowledge that this court has previously held that the State’s burden of proving guilt beyond a reasonable doubt is necessary to preserve a defendant’s presumption of innocence and is an issue akin to the right to a jury trial in that both are fundamental rights. Anderson v. State, 353 Ark. 384, 108 S.W.3d 592 (2003). Unlike many other constitutional rights, the State’s burden of proof beyond a reasonable doubt may not be waived once the accused pleads not guilty. Id. Moreover, we have held that we will address an argument that the State improperly shifted the burden of proof under the third Wicks exception, despite the lack of a contemporaneous objection below. Id. at 395, 108 S.W.3d at 599 (“The four Wicks exceptions are (1) when the trial court fails to bring to the jury’s attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and hence no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly; and (4) Ark. R. Evid. 103(d) provides that the appellate court is not precluded from taking notice of errors affecting substantial rights, although they were not brought to the attention of the trial court.”). What is troublesome, however, is the majority’s finding that the trial court itself shifted the burden of proof to Thornton based on the statement that “there is nothing in the record showing anything other than an intentional act,” an argument that is simply not presented. Moreover, a prosecutor may mention the fact that the State’s evidence has remained undisputed. Rounsaville v. State, 2011 Ark. 236, 2011 WL 2062321. Here, the trial court’s statement is more in line with a conclusion that the State’s evidence that this was an |2iintentional act was undisputed. However, because we do not have a developed argument on this point, I cannot join the majority’s decision to anchor its holding on this single statement. Based on the majority’s failure to view the evidence in the light most favorable to the State and its decision to address a burden of proof argument that was not presented on appeal, I respectfully dissent. BAKER, J., joins.